IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2026

**STATE OF TENNESSEE v. BRIAN PHILLIPS**

**Appeal from the Criminal Court for Knox County**
**Nos. 120731, 130233        G. Scott Green, Judge**

———————————————————

**No. E2025-00994-CCA-R3-CD**

———————————————————

This single appeal asks this Court to review the trial court's sentencing and consequence determinations at Defendant's, Brian Phillips, combined violation of probation and sentencing hearing in two separate matters. Defendant challenges the trial court's denial of alternative sentencing following his guilty pleas to two counts of aggravated assault and one count of evading arrest in case number 130233 and violation of probation in case number 120731. Because the trial court did not abuse its discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

Eric M. Lutton, District Public Defender; Jonathan Harwell (on appeal); Jessica Greene (at guilty plea and motion hearing); Mari Jasa (at guilty plea); and Michael Tabler (at guilty plea), Assistant Public Defenders, Knoxville, Tennessee, for the appellant, Brian Phillips.

Jonathan Skrmetti, Attorney General and Reporter; Kelly Telfeyan, Assistant Attorney General; Charme P. Allen, District Attorney General; Christy Caviness (at plea), TaKisha Fitzgerald (at sentencing), and Justin Pruitt (at motion hearing), Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted in February of 2022 in case number 120731 for violation of an order of protection, two counts of aggravated assault, and two counts resisting arrest for events that took place on or about April 20, 2021. Defendant pled guilty to two counts of aggravated assault, a Class C felony, and received a total effective sentence of three years

as a Range I standard offender to be served on supervised probation. The Special Conditions box on the judgment form indicated that Defendant was to serve the sentence on "enhanced probation" conditioned on "not hereafter violating any of the laws of any city, state, or of the United States or being guilty of any misconduct inconsistent with good citizenship." Defendant was also required to "successfully complete the FACT program; have no contact with Donna or William Phillips; and stay off the property located at [an address on] Washington Pike." The remaining counts of the indictment were dismissed.

At the plea submission hearing, counsel for the State explained that if the case had gone to trial:

> [T]he State's proof would show that on April 20th, 2021, officers responded to a report of a violation of an order of protection at [an address on] Washington Pike in Knox County.
>
> Upon arrival they made contact with [Defendant] who was in the garage of his parents' house in spite of there being . . . an order of protection in place. When officers made contact with [D]efendant, they instructed him to stand up and turn around in order for them to apply handcuffs.
>
> [D]efendant then jumped up, pulled a knife out of his pocket and took an aggressive stance. He then stated to officers, "Nope. Nope. We are not doing this." Officers drew their weapons and instructed him to put the knife down. He refused to put the knife down and Officer Hitts at that time drew his taser and deployed it. That was unsuccessful. [Defendant] then put the knife away but refused to comply with officers' commands. Eventually, officers were able to take [Defendant] into custody. All of these events occurring in Knox County.

In December of 2024, the trial court issued a violation of probation warrant based on Defendant's violation of two rules of probation for his arrest for shoplifting at Target and failure to report the misdemeanor citation to his probation officer prior to booking. In March of 2025, the trial court entered an order amending the violation of probation warrant to include new charges of aggravated assault, "domestic", speeding, resisting arrest, lane restriction violation, reckless endangerment, evading arrest, and reckless driving.

In April of 2025, in case number 130233, an information charged Defendant with two counts of aggravated assault and one count of evading arrest. Defendant entered guilty pleas to all three charges as a Range II multiple offender with a total effective sentence of eight years, with the manner of service of the sentence to be determined by the trial court. Defendant "submitted" to the revocation of probation in case number 120731. The trial

court ordered the sentence in the revocation to run concurrently with the sentence in case number 130233. The judgment forms reflect that the trial court "recommends Lois Deberry." At the submission hearing, counsel for the State explained that, had the case gone to trial:

[T]he State's proof would show that on February 27, 2025, officers were dispatched to [an address on] Washington Pike in Knox County where they spoke with the victim in this case, . . . .

[The victim] would testify that [Defendant] is her brother . . . and that he came to that residence stating that he would kill her with rebar and nobody would know.

[The victim] then stated that [Defendant] told her he would come back with the rebar at one point – I'm sorry, that he did come back with the rebar at one point and charged with the metal weapon placing her in fear of serious bodily injury. The victim would testify that [Defendant] was referring to himself as God.

After attacking [the victim] with the weapon, [Defendant] fled from the residence prior to officers' arrival. Officers were patrolling the area and saw [Defendant's] vehicle and attempted a traffic stop. [Defendant] failed to stop after officers initiated their emergency equipment and a pursuit was initiated. Officers pursued [Defendant] from McGinnis Road where he turned right onto Washington Pike headed westbound. He continued westbound for approximately five miles until he hit Babalay Road. During that pursuit, [Defendant] drove his vehicle in a reckless manner driving into oncoming traffic, failing to maintain lane, driving erratically around the immediate vicinity of other drivers.

Officers would testify that he did put them in danger. At one point, [Defendant] was driving in excess of 90 miles per hour above the posted speed limit. During the pursuit[,] officers had to deploy spike strips hitting all four tires. They would testify that [Defendant] then continued driving with his car after having his tires spiked. Officers then attempted to box the vehicle in[,] stopping [Defendant] in the roadway.

Upon exiting the vehicle, officers gave [Defendant] commands for him to get out of his vehicle. [Defendant] then put the vehicle back into drive nearly striking Officer Lagendorf who had to jump out of the way to avoid being struck by the vehicle. When the officer jumped out of the way, he

- 3 -

struck a cruiser with his body causing damage to the front passenger corner panel and then – I'm sorry, I think that meant [Defendant] caused damage to the front passenger corner panel -- and then drove off subsequently striking the back of Officer Lagendorf's patrol vehicle causing rear body damage.

Officers then reinitiated pursuit and continued chasing [Defendant] as he turned onto Babalay Road where a second box-in was attempted and completed stopping the pursuit. Upon approaching vehicles, officers gave verbal commands to exit his vehicle, which he did not comply with. Officers were able to break the passenger side window and unlock all doors to the vehicle. At this time, [Defendant] still refused to exit the vehicle.

A K-9 was used to assist in apprehending [Defendant]. While the dog was biting [Defendant], he reached for the dog numerous times and stated[,] "This does not even hurt." To which officers applied multiple drive stun taser deployments. [Defendant] was then unbuckled and brought to the ground outside of the vehicle with assistance of the K-9. And [Defendant] continued to resist preventing them from getting control over his hands. Additional drive stuns were completed as well as closed hand strikes to disorient [Defendant].

[Defendant] then gave up and began complying with orders. He was taken into custody and transported to the University of Tennessee Medical Center for treatment of his wounds. All of these events did occur in Knox County.

The trial court held a sentencing hearing and combined it with a revocation sanction hearing. At the hearing, Defendant told the trial court he had been sober for one and a half years and "[w]hen the chance opportunity to use a substance presented itself, [he] made the wrong decision." Defendant admitted that he "had become comfortable" with sobriety and was not "proactive" with his recovery. Defendant explained that a "blackout episode" led to the events for which he pled guilty. He stated that he was never involved in criminal behavior while sober.

The trial court noted that he had a "soft spot for people [who] have limitations" like Defendant's. The trial court commented that if Defendant "c[a]me in here on a revocation where [he] had dirty screens" or if he had "stolen from Walmart" the trial court would work with him. However, the trial court found Defendant's behavior was "very different." The trial court noted Defendant was on probation for two "violent" felonies for aggravated assault when he committed an additional aggravated assault on a family member and then continued to make "bad decision after bad decision." The trial court recounted Defendant's

high-speed chase from police, the way his behavior endangered members of the community, the fact that Defendant tried to "strike a law enforcement officer" with his vehicle, and how Defendant attempted to resist arrest. The trial court found Defendant had four prior felony convictions and eleven misdemeanor convictions and that his record was extensive. Moreover, the trial court noted that prior efforts made to allow Defendant to serve his sentence within the community "simply have not been successful."

The trial court found "no pleasure" finding Defendant in "material violation of the terms and conditions of [his] probation." In case number 120731, the trial court revoked the "aggregate three-year sentence" and ordered Defendant to serve the sentence in the Tennessee Department of Correction, while also recommending Defendant be evaluated for "Deberry Special Needs." In conclusion, the trial court found that the proper consequence for revocation of probation was confinement and ordered Defendant to serve his sentence.

In case number 130233, based on Defendant's guilty plea, the trial court sentenced Defendant to eight years for each count of aggravated assault as a Range II multiple offender and to four years for evading arrest, to be served concurrently. The trial court gave him "street time" on the revocation and credit for time served in custody on the eight-year sentence.

Defendant filed a motion to reconsider. The trial court denied the motion. Defendant appealed.

*Analysis*

On appeal, Defendant argues that the trial court erred in denying an alternative sentence. Specifically, Defendant argues that the trial court's decision to sentence Defendant to incarceration was "not supported by the statutory criteria and was contrary to the public interest." Defendant argues that his convictions arose out of mental health and addiction problems that point toward an amenability to rehabilitation, "a factor that the trial court completely ignored." Defendant does not challenge the overall length of his sentence. The State, on the other hand, argues that the record supports the trial court's decision to reject alternative sentencing and to order Defendant to serve his sentence in incarceration.

A trial court's sentencing decisions are reviewed for an abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). An abuse of discretion standard, accompanied by a presumption of reasonableness, also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and
> (8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b). The trial court must state on the record the factors it considered and the reasons for the ordered sentence. *Id*. at -210(e); *Bise*, 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(c)). Rather, the "advisory" sentencing guidelines provide that a defendant, "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" T.C.A. § 40-35-102(6)(A).

Generally, probation is available to a defendant whose actual sentence imposed is ten years or less, and his or her underlying offense is not excluded by law. T.C.A. § 40-35-303(a). The defendant must prove his or her suitability for probation. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-303(b)). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Id*. (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A)-(C). When addressing a defendant's suitability for probation, the trial court also should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

Initially, we note that Defendant does not challenge the consequence of his revocation or the length of his sentence on appeal. Defendant notes that the trial court "made essentially one decision as to whether to impose incarceration for the new sentence and for the first revoked sentence" and "once the new sentence was imposed as a sentence of incarceration, the determination of the sanction for revocation . . . was academic." Thus, Defendant "focuses [his argument] . . . on the decision to incarcerate [Defendant] on the new eight-year sentence." Because Defendant does not challenge the trial court's decision to order him to serve the sentence on the revocation, this issue is waived.

As to the decision to impose incarceration, the trial court considered the evidence at the sentencing hearing, which included argument of counsel and an allocution by Defendant as well as the exhibits, which included the presentence report, the Strong-R Report, the Day Reporting Center Assessment and Recommendation form, past judgment forms, and a treatment plan prepared by Social Services. The State argued for total incarceration; Defense counsel argued for inpatient treatment, stressing Defendant's amenability to rehabilitation, desire to be part of his autistic son's life, and willingness to address his mental health issues. The trial court acknowledged a "soft spot" for people with "limitations" like Defendant's but explained that his arrest for "an additional aggravated assault upon a family member" while on probation for "two violent felonies" like aggravated assault was followed by "bad decision after bad decision." The trial court recounted how Defendant avoided police and led them on a high-speed chase in excess of ninety miles per hour that "endangered every other member of the community" in his path, culminating in another aggravated assault on a law enforcement officer with his vehicle and resisting arrest. The trial court noted Defendant's "extensive" criminal record with

four prior felony convictions and eleven misdemeanor convictions. The trial court also found "prior efforts have been made to allow [Defendant] to serve a sentence within the community that simply have not been successful." The presentence report indicates that Defendant violated probation on four different occasions and had his probation revoked on three occasions. The trial court expressed "an obligation to keep the community safe" because of Defendant's actions. As a result, the trial court denied alternative sentencing.

Contrary to Defendant's argument that the trial court did not find that his conduct was such that denial of an alternative sentence was necessary to avoid depreciating the seriousness of the offense and did not consider deterrence, the record reflects that the trial court utilized the criteria set forth in Tennessee Code Annotated section 40-35-103(1)(A)-(C) as well as the additional factors from *Trent*. Moreover, as a Range II multiple offender, Defendant was not a favorable candidate for alternative sentencing. T.C.A. § 40-35-102(6)(A). Defendant has failed to carry his burden of demonstrating that the sentence imposed by the trial court was improper; the trial court did not abuse its discretion. Consequently, Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE